United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
Plaintiff,

v.

JAPHETH DILLMAN,
Defendant.

Case No. 23-cr-00140-RS-1

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS *IN LIMINE***

In advance of trial, the parties in this criminal fraud case have submitted seventeen motions *in limine*. For the following reasons, the motions are granted in part and denied in part.

1. <u>Defendant's Motions</u>

Defendant has submitted seven motions *in limine*. Six are unopposed. Those are: (1) to preclude reference to the criminal convictions of Jack Abramoff and Rowland Marcus Andrade (MIL 1); (2) to have the government designate as exhibits the portions of the recordings it intends to use at trial (MIL 2); (3) to read a neutral statement of the case instead of the indictment to the jury (MIL 3); (4) to prevent the government from offering evidence of prior bad acts under Federal Rule of Evidence 404(b) (MIL 4); (5) to prevent the government from offering evidence not produced in discovery (MIL 5); and (6) to exclude all witnesses except for the case agent from trial (MIL 7). Those motions are granted.

The only motion opposed by the government is that to designate, using the court's inherent powers, all government witnesses as under defense subpoena (MIL 6). Federal Rule of Criminal Procedure 17(b) provides the procedure for designating a government witness as under defense

subpoena should the defendant be unable to pay. Rule 17(b) does not contemplate a blanket subpoena covering all government witnesses. Rather, the defendant must identify a specific witness whose "presence [is necessary] for an adequate defense" and then present an "ex parte application" which demonstrates his "inability to pay the witness's fees." Fed. R. Crim. P. 17(b). Therefore, Defendant's request for an order deeming all government witnesses as under defense subpoena is denied. Defendant is free to follow the procedures set out in Rule 17(b) to procure the presence of particular witnesses, and any Rule 17(b) application will be evaluated when submitted.

2. The Government's Motions

The government has submitted ten motions *in limine*. Three are completely unopposed. Those are: (1) to preclude the defense from "victim blaming" and presenting other improper reliance defenses (MIL 1); (2) to admit certain business and public records under Rule 803(b) (MIL 7); and to (3) exclude all witnesses from the trial except for the case agent (MIL 9). Those motions are granted.

Defendant does not oppose, in principle, five of the government's motions. First, the government moves to admit Defendant's out-of-court statements if offered by the government under Rule 801(d)(2)(A) (MIL 2). Though the government accurately describes Rule 801(d)(2)(A), it does not identify the specific statements it intends to admit, and there is no way to know if the statements run afoul of some other evidentiary rule without that information. Therefore, the government's motion is granted, but that does not preclude Defendant from objecting to the admission of his own statements at trial.

Second and relatedly, the government moves to admit out-of-court statements that are necessary to provide context for Defendant's statements that come in under Rule 801(d)(2)(A) (MIL 3). Again, the government is entitled to introduce evidence for that limited purpose, but without knowing the precise statements the government intends to offer, there is no way to know whether they actually contextualize admissible evidence. Thus, while the motion is granted, Defendant retains the right to object to specific statements at trial. Defendant is also entitled to a limiting instruction telling the jury that these statements are not to be considered for the truth.

United States District Court
Northern District of California

Third, the government moves to admit out-of-court statements made by Defendant's alleged co-conspirators in furtherance of the conspiracy under Rule 801(d)(2)(E) (MIL 4). Similarly, the government has correctly identified a basis for admitting evidence, but without more detail it is impossible to admit any particular statements. Therefore, the motion is granted, but Defendant remains free to object to the admission of any of these statements as non-compliant with Rule 801(d)(2)(E) (or any other rule of evidence) during trial.

Fourth, the government moves to preclude Defendant from offering a theory that he is not guilty because he intended, in good faith, to repay investors (MIL 5). Defendant agrees that statements about his intentions to repay investors are only relevant insofar as they go to his intent at the time he made an allegedly fraudulent statement. The government's motion is therefore granted, but Defendant is free to move to admit evidence at trial of his intent vis-à-vis investors if he can demonstrate adequately that the evidence is relevant to his intention at the time of the alleged misrepresentations.

In the same motion, the government moves to prevent Defendant from presenting an advice of counsel defense. Defendant has, at this point, disclaimed any intention to present an advice of counsel defense, so that portion of the motion is granted.

Fifth, the government moves to compel Defendant to comply with his reciprocal discovery obligations (MIL 6). The government has not alleged that Defendant has thus far failed to fulfill any of his discovery obligations, so this motion is denied. The government is free to renew it if specific discovery issues arise during trial.

Two of the government's motions are genuinely contested. First, it seeks to admit six charts as summaries of voluminous admissible information under Rule 1006 (MIL 8). Defendant objects to two of those charts, proposed Exhibits E and F. Exhibit E is titled "BlockBits OUTFLOW," and it purports to organize the outflows from BlockBits-related accounts into various categories, including investor payments, technology and professional expenses, and cold storage expenses. Defendant contends that this exhibit is argumentative, but it appears to do nothing more than place account outflows into uncontroversial buckets. That is unquestionably

helpful to the jury, as it relieves the jury of having to examine voluminous bank records to figure out where the money went. If Defendant believes that the government's categorization implies something untrue about the use of funds, he is free to expose that on cross-examination. The government's motion is granted as to Exhibit E.

Exhibit F is more difficult. It is titled "Use of BlockBits Funds from Japeth Dillman Accounts" and, similarly, traces funds from the BlockBits account to various categories of expenses attributable to Dillman, including travel and transportation, rent, meals and entertainment, and personal services. There are several problems with this summary. First, by drawing a straight line from the bubble titled "BlockBits" to the bubble titled "Japeth Dillman," it impliedly argues that Defendant exercised dominion over the BlockBits account and treated it like a personal account. Perhaps that is true, but it is a fact the government needs to prove. Second, the government's decision to highlight certain expenses—such as travel, retail stores, meals and entertainment, and personal services—implies that Defendant took investors' money and spent it just on himself, a point which may well have persuasive value before the jury. In contrast, the exhibit relegates categories like cash withdrawal, telecommunications, and title company to a footnote, even though spending on those categories could well indicate a desire to use funds on legitimate business-related expenses. Though it is true that these spending categories are, according to the government's tracing methodology, generally smaller than the highlighted categories, they are non-negligible, making the government's decision to display only the six largest expenditure categories appear either arbitrary or motivated. Therefore, the government's motion is denied as to Exhibit F.

Finally, the government proactively moves to limit improper impeachment testimony of David Mata, an alleged co-conspirator who is expected to testify (MIL 10). It seeks to prevent Defendant from inquiring into collateral matters which, it says, are minimally probative of Mata's character for truthfulness or untruthfulness. This request is overbroad. At a minimum, there is no basis to preclude Defendant from asking Mata about his plea agreement, which may be strongly probative of his motive to testify in a manner favorable to the government. It is possible that some

United States District Court
Northern District of California

other areas of inquiry identified by the government would risk distracting the jury with extraneous matters, but those concerns can be ameliorated with contemporaneous objections. This motion is denied.

In sum, Defendant's first, second, third, fourth, fifth, and seventh motions *in limine* are granted. Defendant's sixth motion *in limine* is denied, but Defendant is free to request particular witnesses be put under subpoena pursuant to the procedures set out in Rule 17(b). The government's first, seventh, and ninth motions *in limine* are granted. Its second, third, and fourth motions are granted, but Defendant is free to object to any evidence the government seeks to admit at trial notwithstanding those rulings. Its fifth motion is granted, but Defendant is free to offer any evidence during trial if it can demonstrate that evidence is probative of his intent at the time of the alleged misrepresentations. Its eighth motion *in limine* is granted except as to Exhibit F. Its sixth and tenth motions *in limine* are denied.

**IT IS SO ORDERED**.

Dated: August 3, 2026



RICHARD SEEBORG
United States District Judge